**Sherry M. GREEN and Jeremy Welch, Plaintiffs,**

v.

**HOUSING AUTHORITY OF CLACKAMAS COUNTY, Defendant.**

**Civil No. 97-212-RE.**

United States District Court, D. Oregon.

Feb. 19, 1998.

Dennis Steinman, Steinman Cooper Wiscarson, LLC, Portland, OR, for Plaintiffs.

Clay D. Creps, Katherine S. Somervell, Bullivant Houser Bailey, Portland, OR, for Defendant.

## OPINION

REDDEN, District Judge.

This is an action for violation of the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. § 12132; the Federal Fair Housing Amendments Act of 1988(FHA), 42 U.S.C. § 3604(f)(3)(B), the Rehabilitation Act, as amended by the Civil Rights Act of 1991, Title V, § 504; 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act), and supplemental state claims. Both parties have moved for summary judgment. Plaintiffs' motion is granted; defendant's motion is denied.

Plaintiffs Sherry Green and Jeremy Welch are mother and son tenants in a single-family low-income housing property administered by defendant Housing Authority of Clackamas County (HACC) (defendant). Plaintiffs have been tenants since 1987.

Welch is disabled due to deafness in both ears. Green alleges that in July 1995, she notified the defendant that she intended to purchase a dog as a hearing assistance animal for her son. Defendant's residential

lease with plaintiffs prohibits pets. In August 1995, Green purchased and began training the dog. In September 1995, plaintiffs moved to another HACC property which had the same lease restriction on pets. On October 2, 1995, Green provided HACC with written notice of the existence of the hearing assistance dog. On December 15, 1995, Green filed a waiver request with the HACC alleging that the dog was an assistance animal and not a pet and therefore not subject to the lease restriction.

On January 11, 1996, HACC refused plaintiffs' waiver request. On February 1, 1996, HACC filed a Forcible Eviction and Detainer action against plaintiffs. To prevent eviction from their home, plaintiffs agreed to remove the dog from the HACC property, and on February 16, 1996, took the dog to the Humane Society.

## DISCUSSION

■ "To prove a public program violates Title II of the ADA, a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by a public entity, and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976, 978 (9th Cir.1997).

■ Establishing a prima facie case under Section 504 and the FHA is similar. "[U]nder Section 504 of the Rehabilitation Act, a plaintiff must show (1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefit of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Weinreich*, 114 F.3d at 978. To establish "a prima facie case under [the FHA] [plaintiff] is required to show that (1) [plaintiff] suffers from a handicap as defined in 42 U.S.C. § 3602(h); (2) defendants knew of [plaintiff's] handicap or should reasonably be expected to know of it; (3) accommodations of the handicap 'may be necessary' to afford [plaintiff] an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *U.S. v. California Mobile*

*Home Management Co.*, 107 F.3d 1374, 1380 (9th Cir.1997).

Under Or.Rev.Stat. § 346.660, plaintiffs must prove that a landlord refused to rent a dwelling unit to a deaf person on the basis of the use or possession of a hearing ear dog. Under Or.Rev.Stat. § 346.690, plaintiffs must prove that a landlord refused to rent a dwelling unit to a physically impaired person on the basis of the use or possession of an assistance animal.

■ There is no dispute that Jeremy is a qualified individual with a disability, or that HACC is a public entity as defined by the ADA. The dispute, specifically, is whether plaintiffs' hearing assistance dog was really, in fact, a hearing assistance dog—or simply a household pet. HACC argues that the dog was not an appropriate accommodation for Jeremy's disability because the plaintiffs were unable to produce any "verification" that the dog was a "certified" hearing assistance trained animal. HACC admits that a disabled person has an absolute right to an assistance animal, and that it was capable of accommodating plaintiffs' request for a hearing dog without incurring significant financial or administrative burdens. HACC relies on its own internal policy to make the determination of whether an animal is an assistance animal. Plaintiffs contend that there exists no federal or state statutes which allow the defendant to decide whether the dog is an assistance animal.

HACC requested independent authority, other than plaintiffs, to make the determination that the dog was an assistance animal. Plaintiffs contend that this is contrary to HACC's established practice of accepting the tenant's word that the assistance animal is effective. It is undisputed that defendant has never questioned the ability of guide dogs for blind tenants or companion animals for emotionally disturbed tenants. It is also undisputed that defendant never asked mother or son to demonstrate to it that the dog assisted Jeremy with his disability.

Further, there is no federal or Oregon certification process or requirement for hearing dogs, guide dogs, companion animals, or any type of service animal. There is no federal or Oregon certification of hearing dog trainers or any other type of service animal.

The only requirements to be classified as a service animal under federal regulations are that the animal be (1) individually trained, and (2) work for the benefit of a disabled individual. There is no requirement as to the amount or type of training a service animal must undergo. Further, there is no requirement as to the amount or type of work a service animal must provide for the benefit of the disabled person. 28 C.F.R. § 36.104. The regulations establish minimum requirements for service animals.

Plaintiffs claim that the dog underwent individual training at home and was also trained by a professional trainer. Plaintiffs state that the dog alerted Jeremy to several sounds, including knocks at the door, the sounding of the smoke detector, the telephone ringing, and cars coming into the driveway. HACC's requirement that an assistance animal be trained by a certified trainer of assistance animals, or at least by a highly skilled individual, has no basis in law or fact. There is no requirement in any statute that an assistance animal be trained by a certified trainer.

The Seventh Circuit has already rejected a requirement that a hearing dog be professionally trained or certified. "The federal statute does not say any of these things, and there is no basis for imputing them into a text that is silent on the subject." *Bronk v. Ineichen,* 54 F.3d 425, 430 (7th Cir.1995). The court continued, "[t]he accommodation must facilitate a disabled individual's ability to function, and it must survive a cost-benefit balancing that takes both parties' needs into account." *Id.* at 431. The court stated that "on one side of the equation is the degree to which [the dog] aids the plaintiffs in coping with their disability. Professional credentials may be *part* of that sum; they are not its *sine qua non.*" *Id.* (emphasis added).

Under Title II, the FHA and § 504, a modification to a rule *must* be made unless it causes some undue burden. Congress could have empowered the public entity with an evaluative process beyond the impact on the public entity itself—and did not. The intent of Title II, the FHA and § 504 was to balance inequities.

HACC asserts that "the mere fact that [HACC] would not have been unduly burdened by modifying the no-dogs provision for [the dog] does not mandate that [HACC] do so." HACC, however, has not cited any statute, regulation, or other authority that supports its position under Title II, the FHA, or § 504. Congress stated that a "public entity shall make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). In other words, Congress has stated that a recipient of federal funds, such as defendant, may not impose any policy, such as requiring certification or third-party verification of an assistance animal's abilities, if it limits the participation of a handicapped tenant. The only way defendant can avoid modifying its "no pets" policy is if the animal fundamentally alters the nature of the program or if the defendant suffers undue financial and administrative burdens. Defendant admits that waiving the "no pets" policy does not cause either a fundamental alteration to its programs or cause any financial or administrative burden.

After plaintiffs chose to get rid of the dog rather than face eviction, the defendant—unsolicited—installed flashing lights in plaintiffs' apartment. Plaintiffs argue that the flashing lights do not provide the accommodation for Jeremy that the dog did. Particularly, the strobe smoke alarm was of no benefit to Jeremy because he does not wake up when a light flashes. The dog alerted Jeremy to the telephone ringing, but the strobe lights installed by the defendant cannot do that; the dog alerted Jeremy to cars in the driveway, which the lights cannot do; the dog alerted Jeremy to knocks on the door and the smoke alarm no matter where he was in the house. The flashing lights were only installed in the hallway and son's bedroom and were useless, argue plaintiffs, if Jeremy was in the kitchen, bathroom, another bedroom, or in backyard. Also, there are no flashing lights in the Community Center, and the flashing lights provide no warning to Jeremy if a car comes up behind him in the parking lot.

■ Regarding plaintiffs' state law claims pursuant to Or.Rev.Stat. §§ 346.660 and 346.690, the requirement in § 346.640(2) that a hearing ear dog must be on a orange leash is preempted by federal law. Oregon state law is more restrictive than any federal law on this subject. "Absent explicit preemptive language, Congress' intent to supersede state law in a given area may nonetheless be implicit if a scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it[.]' " *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 239, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). A conflict with federal law arises when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Here, Congress defined a service animal in broad terms. The U.S. Department of Justice has stated that the ADA must prevail over any conflicting state statute. ADA, Title II, Technical Assistance Manual, II–1.4100 (1992). Plaintiffs' dog fits within the ADA definition of a service animal. Oregon law is preempted.

## CONCLUSION

HACC did not accommodate plaintiffs by modifying its "no pets policy," despite the fact that there was no undue burden on it. Defendant acknowledges that it was told that the dog alerted son to knocks at the door and to the sounding of the smoke alarm. HACC's belief that such assistance was not sufficient to qualify the dog as a service animal is irrelevant. Since there was no impact on defendant, plaintiffs should have been allowed to keep the dog as an assistance animal chosen by plaintiffs to help Jeremy enjoy equal access to the programs and services provided by HACC to all tenants.

Plaintiffs' summary judgment motion is granted; defendant's cross-motion for summary judgment is denied.