Armstrong, J.
Timberlane Mobile Home Park appeals the superior court decision affirming an administrative determination that it discriminated against Candida and Scott Campbell because of Candida’s use of a service animal. Timberlane argues that Candida’s dog is not a service animal because it was not trained to assist or accommodate Candida’s disability. Because the administrative law judge found that the dog had not received training to assist Candida, it erred in deciding that Timberlane discriminated against Candida and Scott. Accordingly, we reverse.
FACTS
The Washington State Human Rights Commission filed a complaint on behalf of Candida Campbell and her brother, Scott Campbell, against Timberlane Mobile Home Park, and certain owners and employees, alleging that Timberlane had discriminated against the Campbells in violation of RCW 49.60.222 by expelling Candida from the trailer she lived in because of her disability and use of a service animal.
*890 After a hearing, an administrative law judge (ALJ) concluded that Timberlane’s stated reasons for denying Candida’s application were pretextual and that it had discriminated against the Campbells by denying their rental application because Candida used a service animal. The court awarded $3,044 in actual damages and $10,000 for emotional distress and mental suffering to Candida, $2,000 for emotional distress and mental suffering to Scott, and ordered Timberlane to pay a $2,000 civil penalty.
Between August and October 1997, Candida, Scott, and Scott’s three children began living in a mobile home owned by their parents on Timberlane’s property in Winlock, Washington. The rental applications Scott and his parents completed listed four occupants. The lease Scott signed had a “no . . . pets” clause. Administrative Record at 11-12. Timberlane does not challenge the ALJ’s finding that Candida lived openly as a resident from the time she moved to Timberlane. According to the Campbells, only Scott and his children were listed on the lease because Candida had been the victim of a violent crime.
Shortly after Candida moved to Timberlane, a vehicle struck and killed her pet Pomeranian, Little Dog. Candida replaced Little Dog with Spicey, a five-week-old Pomeranian puppy. Because Candida wanted Spicey to bond to her instead of Scott and his children, she kept Spicey in a playpen in her bedroom. Candida taught Spicey to follow commands, such as to stay, come, sit, and walk with her. Candida also taught Spicey to jump up on the back of a chair so she could put her leash on or pick her up without bending over. Candida rewarded Spicey with food and attention for good behavior; she scolded Spicey for bad behavior. Candida drew on her experiences as a program aide working with autistic children. But Candida had no training to be an animal trainer, nor had Spicey received any service animal training from a professional.
*891 Candida experiences severe migraine headaches[1] about three times a week. Her symptoms include vision problems, nausea, vomiting, and tenderness on her right side. When she has enough warning, Candida can take a nasal spray that sometimes prevents a migraine. Once she has a migraine, others can assist her by taking her to the bathroom, getting her pain and nausea medication, or bringing her ice packs and cold cloths.
When Spicey was seven to nine months old, she began responding to Candida’s migraines. If Candida had a migraine, Spicey found Scott or another person nearby and would “freak out” by running, jumping, barking, scratching on a door, or pulling at their leg to alert them. Clerk’s Papers (CP) at 13. The person alerted would then assist Candida. While Candida receives assistance, Spicey stands quietly and watches. After Candida receives assistance, Spicey is told she is a “good girl” and may be given a treat. CP at 271.
On March 23, 1998, Timberlane notified Scott that he was violating his lease because, among other reasons, Candida and Spicey lived in his trailer. Candida formally applied for tenancy at Timberlane in June. On July 23, Timberlane issued a third notice to Scott, stating that all tenants needed to be approved and that Candida’s application had been denied because of credit problems. But the credit check was not actually run until July 24. On August 19, Candida wrote Timberlane, requesting tenancy and a reasonable accommodation for Spicey. The same day, her neurologist submitted a letter documenting her migraines and stating that it was reasonable for her to have Spicey as a service animal to alert others when Candida was ill.
On September 22, Timberlane’s attorney notified Scott that if Candida did not move, he would begin eviction proceedings. The same day, he sent Candida a demand to vacate. In September 1999, Candida left Timberlane and moved into her parents’ home.
*892 The ALJ found that Timberlane discriminated against Candida by denying her application because she used a service animal. After the Clark County Superior Court affirmed the ALJ’s orders, Timberlane appealed.
ANALYSIS
I. Standard of Review
Under the Administrative Procedure Act (APA), chapter 34.05 RCW, a reviewing court may reverse an agency’s adjudicative decision if, among other reasons, the agency erroneously interpreted or applied the law. RCW 34.05.570(3)(d); Aponte v. Dep’t of Soc. & Health Servs., 92 Wn. App. 604, 615, 965 P.2d 626 (1998). We apply the APA’s standards directly to the agency record, sitting in the same position as the superior court. Burnham v. Dep’t of Soc. & Health Servs., 115 Wn. App. 435, 438, 63 P.3d 816, review denied, 150 Wn.2d 1013 (2003) (citing City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wn.2d 38, 45, 959 P.2d 1091 (1998)).
The party challenging an agency’s action bears the burden of demonstrating the invalidity of the decision. RCW 34.05.570(l)(a). We review factual findings to determine if substantial evidence supports it, RCW 34.05.570(3)-(e); we review legal conclusions de novo to determine if the hearing judge correctly applied the law, including whether the factual findings support the legal conclusions. In re License of Farina, 94 Wn. App. 441, 450, 972 P.2d 531 (1999).
Timberlane contends that Spicey is not a “service animal” under RCW 49.60.040(23) because she was not trained to assist Candida. Appellant’s Br. at 1. We agree.
II. Service Animal
Here, the key unchallenged findings are: (1) although Spicey did not receive training to do so, she will “freak out” and get Scott when Candida has a severe migraine incident, *893 and (2) it is possible Spicey would not have been trainable as a service animal, but by March 1998, Spicey assisted Candida in alleviating her migraine condition by bringing her assistance when she was unable to help herself. CP at 13. Based on these findings, the administrative law judge concluded that “[n]ot much [training] is required” of an alert dog, that Spicey had a “propensity” to alert others to Candida’s needs, and that Spicey “achieves what she wants — attention to Ms. Campbell — [which] is in itself positive reinforcement of desired behavior and thus a form of training.” CP at 33-34.
Under RCW 49.60.040(23), a “service animal” is one “that is trained for the purpose of assisting or accommodating a disabled person’s sensory, mental, or physical disability.” WAC 162-26-040 offers a nearly identical definition: “an animal that is trained for the purpose of assisting or accommodating a person’s sensory, mental, or physical disability.”
The ALJ relied in part on Green v. Housing Authority of Clackamas County, 994 F. Supp. 1253 (D. Or. 1998). In Green, the court considered whether a dog was a hearing assistance animal or a pet; the housing authority argued that the dog was not an appropriate accommodation because the plaintiffs did not produce any verification that the dog was a certified hearing assistance animal. Green, 994 F. Supp. at 1255. Rejecting this argument, the court noted that under federal law, service animals need only be (1) individually trained, and (2) work for the benefit of a disabled individual. Green, 994 F. Supp. at 1256. Citing C.F.R. § 36.104, the court stated, “[t]here is no requirement as to the amount or type of training a service animal must undergo. Further, there is no requirement as to the amount or type of work a service animal must provide for the benefit of the disabled person.” Green, 994 F. Supp. at 1256.
Yet because most animals are not equipped to work or perform tasks for the disabled, there must be some evidence of individual training to set the service animal apart from the ordinary pet. Prindable v. Ass’n of Apartment Owners of *894 2987 Kalakaua, 304 F. Supp. 2d 1245, 1256 (D. Haw. 2003) (citations omitted). In Prindable, the court concluded that a condominium resident’s claim that his dog had been individually trained to provide emotional support and to alert him to any unusual circumstances, without more, was insufficient to make the dog a service animal. Prindable, 304 F. Supp. 2d at 1256.
The ALJ’s findings that Spicey was not specifically trained to alert others when Candida was incapacitated by a migraine and that Spicey may not have been trainable as a service animal, are at odds with the legal conclusion that Spicey was a service animal under RCW 49.60.040(23), which plainly requires that the animal’s training be for the purpose of assisting or accommodating a disabled person. Rather, the ALJ’s findings lead necessarily to the conclusion that Spicey was not a service animal within the statutory meaning. And the ALJ’s reasoning that Spicey’s training consisted of getting what she wanted — attention from Candida — would make any family pet into a service animal.
We reverse the judgments in favor of Candida and Scott and Timberlane’s civil penalty. On remand, the trial court should dismiss the complaint filed by the Human Rights Commission.
Houghton and Bridgewater, JJ., concur.

 Candida suffers from other medical concerns, but her migraines are the basis for her disability in this case.