**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2186-16T2

CAROLINE HARMON,

     Plaintiff-Appellant,

v.

BILTMORE REALTY COMPANY,
LLC; NICHOLAS RIZZO; SCOTT
O'BRIEN; JEFFREY M. COHEN, ESQ.;
HENRY LAMELLA, ESQ., and COHEN
& LAMELLA, LLC,

     Defendants-Respondents.

_____

        Submitted September 13, 2018 – Decided October 19, 2018

        Before Judges Whipple and DeAlmeida.

        On appeal from Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0593-12.

        Patrick J. Whalen, attorney for appellant.

        Cole Schotz, PC, attorneys for respondents Biltmore Realty Company, LLC, Nicholas Rizzo and Scott O'Brien (Joseph Barbiere and David S. Gold, of counsel and on the brief).

Pillinger Miller Tarallo, LLP, attorneys for respondents Jeffrey M. Cohen, Esq., Henry Lamella, Esq. and Cohen & Lamella, LLC (Patrick J. Cosgrove, on the brief).

PER CURIAM

Plaintiff, Caroline Harmon, appeals from the June 29, 2016 order granting summary judgment to defendants on her claims for relief under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. (CFA), the Tenant Reprisal Act, N.J.S.A. 2A:42-10.10 to -10.14 (TRA), and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-4.1 (LAD). We affirm.

We discern the following facts from the record. Plaintiff is a woman, now in her nineties, who lived in the Hunter Hills Apartments beginning in 2007. Defendants are Biltmore Realty Company, LLC, (Biltmore), Nicholas Rizzo, General Managing Partner of Biltmore, and Scott O'Brien, property manager, as well as Jeffrey M. Cohen, Esq., Henry Lamella, Esq., and Cohen & Lamella LLC. In 2010, plaintiff's apartment failed an inspection due to bed bug infestation. The New Jersey Department of Community Affairs gave Biltmore thirty days to correct the problem. A few months later plaintiff informed the property manager, Scott O'Brien, that her apartment was infested with bed bugs. Biltmore enlisted an exterminator to investigate and treat the infestation in

A-2186-16T2

plaintiff's apartment. The exterminator was unable to eliminate the infestation, arguably because plaintiff was physically unable to comply with the preparation procedures, which included removing all bedding and clothing, moving furniture six inches from the wall and taking down all curtains.

The infestation persisted, so on July 22, 2011, O'Brien relocated plaintiff to a new apartment in the complex. Plaintiff resisted moving arguing she was not physically able, but O'Brien assured her she would not have to physically participate in the move. When plaintiff relocated, the majority of her belongings remained in the old apartment and Biltmore eventually moved the items to the garage assigned to the old apartment. In her new apartment, Biltmore provided plaintiff with a bed frame, mattress, bedroom furniture, love seat, chair, coffee table and two side tables. Her furnishings and clothes from her old apartment were not moved. Plaintiff asserts when she moved into the new apartment there were no lights, no kitchen table, and none of her clothes, so she went back to recoup items from her old apartment.

Within a few months, her new apartment was infested with bed bugs. Plaintiff continued to complain to defendants and governmental agencies, including the Health Department, the Division of Consumer Affairs, and the Department of Human Services. During this time, the exterminator attempted

A-2186-16T2

to eradicate the problem but plaintiff did not or could not adequately prepare the apartment for thorough extermination methods and defendant did not assist her.

On July 9, 2012, Biltmore sent plaintiff a Notice to Cease. The notice stated plaintiff was willfully or grossly negligent and caused destruction to rented premises and substantial breach of property owner's rule and regulations, because she did not follow the instructions for extermination. The notice warned that if the apartment was not adequately prepared for the extermination process on July 16, 2012, Biltmore would evict her.

On July 17, 2012, Biltmore sent plaintiff a Notice to Vacate. The notice advised plaintiff her lease would terminate on July 23, 2012, because she did not adequately prepare the apartment for extermination. The notice offered plaintiff another chance to avoid eviction by completing the necessary preparations. On July 27, 2012, Biltmore, through their lawyers, Cohen and Lamella LLC, filed a complaint for eviction, citing plaintiff as a disorderly tenant and asserting that she had willfully destroyed rental property, and was the cause for the bed bug infestations. The complaint was withdrawn, and plaintiff was never evicted.

On October 15, 2012, plaintiff filed a complaint against the Biltmore defendants and later filed an amended complaint alleging malpractice against

the Cohen and Lamella defendants. The complaint alleged the Biltmore defendants were negligent, violated the TRA, violated the CFA, breached the implied warranty of habitability, breached their contract, breached the implied covenant of good faith and fair dealing, violated the LAD and sought injunctive relief and receivership, all stemming from the bed bug infestation in plaintiff's apartment. The amended complaint asserted Cohen and Lamella's representation of the Biltmore defendants violated New Jersey's Anti-Eviction Act and the CFA. Plaintiff sued the lawyers because they allegedly counseled defendants to initiate eviction proceedings against her.

Plaintiff asserted she had suffered physically, mentally and emotionally from the infestations and defendants' mismanagement. She asserted defendants denied her reasonable accommodations because defendants did not assist her in the extermination preparation process, including moving heavy furniture. During her deposition, plaintiff did not characterize herself as disabled, but physically limited due to age, arthritis, the curvature of her back, and shortness of breath. Plaintiff claimed the defendants were aware of these limitations.

On June 4, 2013, plaintiff filed an Order to Show Cause seeking a treatment plan for the apartment. However, plaintiff was unwilling to vacate temporarily in order for an exterminator to treat the premises. Plaintiff asserted

due to health issues she was unable to relocate for even one night. Plaintiff's counsel proposed defendants assist with the pretreatment and treatment process in a way that did not require relocation.

On November 4, 2013, the parties signed a Consent Order agreeing Biltmore would have the apartment exterminated in a manner that did not require plaintiff's absence from the apartment for more than five hours, and in such a way that did not leave her without a bed to sleep on at night. In so agreeing, plaintiff acknowledged the potentially limited effectiveness of this method of treatment. The parties also agreed to treat plaintiff's personal property in storage.

However, shortly thereafter, defendant informed plaintiff the exterminator warned of ineffective treatment if any furniture, including plaintiff's bed, remained in the apartment during treatment and recommended plaintiff leave the apartment for two nights to allow the administration of an effective treatment. Defendants offered to put her in a hotel for two nights. Plaintiff instead requested defendants provide her with a temporary bed and furnishings so that she could remain in the apartment overnight. The parties remained at an impasse.

A-2186-16T2

On October 7, 2015, the Biltmore defendants moved for partial summary judgment for the statutory counts and all counts directed at Rizzo, and then for the remaining common law counts on November 5, 2015. On October 19, 2015, the Cohen and Lamella defendants moved for summary judgment and dismissal of the amended complaint.

On June 29, 2016, the motion judge granted partial summary judgment dismissing plaintiff's claims under TRA, CFA, and LAD, as well as dismissing all claims against Rizzo and the Cohen and Lamella defendants. The trial judge denied the summary judgment motion for plaintiff's negligence claim against the Biltmore defendants. He also denied the motion as to the breach of contract claim and the claim of breach of the covenant of good faith and fair dealing.

On December 9, 2016, plaintiff voluntarily dismissed all remaining claims against all defendants with prejudice in exchange for $45,000. In the Stipulation of Dismissal plaintiff specifically reserved her right to appeal the summary judgment order concerning the dismissed statutory claims. This appeal followed.

We review a trial court's summary judgment decision de novo, applying the same standard governing the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). We consider, as the motion judge did, "whether

the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 406 (citation omitted). If there are no genuine issues of material fact, we then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). As a general proposition, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citation omitted). Moreover, our review is limited to an examination of "the original summary judgment record." Noren v. Heartland Payment Sys., Inc., 449 N.J. Super. 193, 196 (App. Div. 2017) (internal quotation omitted).

On appeal, plaintiff argues the court erred granting summary judgment as to her statutory claims. We address each of the three statutory claims in turn.

Plaintiff contends her physical limitations, her arthritis and her age are disabilities that entitle her to an accommodation under the LAD and the court erred dismissing her claims because she did not provide proof of her disability with expert evidence. The LAD provides, in pertinent part that:

All persons shall have the opportunity to . . . obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, liability for service in the Armed Forces of the United States, nationality, sex, gender identity or expression or source of lawful income used for rental or mortgage payments . . . .

[N.J.S.A. 10:5-4.]

We have said the LAD "is to be construed liberally." Franek v. Tomahawk Lake Resort, 333 N.J. Super. 206, 217 (App. Div. 2000). Among the statutes' objectives, "the LAD is intended to insure that handicapped persons will have 'full and equal access to society, limited only by physical limitations they cannot overcome.'" Franek, 333 N.J. Super. at 217 (quoting D.I.A.L., Inc. v. N.J. Dep't of Cmty. Affairs, 254 N.J. Super. 426, 439 (App. Div. 1992)).

To that end, it is unlawful for any person to "[r]efuse to make reasonable accommodations in rules, policies, practices or services . . . when such accommodations or modifications may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling." N.J.A.C. 13:13-3.4(f)(2). Thus, "the LAD prohibits discrimination by a public entity on the basis of a tenant's disability." Oras v. Hous. Auth., 373 N.J. Super. 302, 311 (App. Div. 2004). The statute defines disability as:

physical or sensory disability, infirmity, malformation, or disfigurement which is caused by bodily injury, birth defect, or illness including epilepsy and other seizure disorders, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impairment, deafness or hearing impairment, muteness or speech impairment, or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or any mental, psychological, or developmental disability, including autism spectrum disorders, resulting from anatomical, psychological, physiological, or neurological conditions which prevents the typical exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques. Disability shall also mean AIDS or HIV infection.

[N.J.S.A. 10:5-5(q).]

A disabled tenant alleging a wrongful denial of a requested accommodation bears the initial burden to show the requested accommodation is or was necessary to afford him or her an equal opportunity to use and enjoy a dwelling. If the tenant's burden is successfully met, the burden shifts to the landlord to show the accommodation is or was unreasonable. Oras, supra at 312. Here, plaintiff contends she was entitled to the reasonable accommodation of having the heavy furniture moved and the apartment prepared in anticipation of bed bug extermination treatments and her disability was readily apparent

10

because she was an elderly woman. She argues the Biltmore defendants knew that she had physical limitations because she could not use stairs.

However, discussing disabilities under the LAD in the context of discriminatory discharge from employment, the Supreme Court said "[w]here the existence of a handicap is not readily apparent, expert medical evidence is required." Viscik v. Fowler Equip. Co, 173 N.J. 1, 16 (2002) (citing Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 591-93 (1988) (subsequent citation omitted)). Plaintiff contends the court's requirement of expert evidence to prove her disability ignored the remedial purpose of the statute. Plaintiff asserts her disability was arthritis and old age. Old age is readily apparent, however, it is not in and of itself, a protected disability. Many consequences of old age are disabilities but not readily apparent. However, here the trial judge determined plaintiff's arthritis was not readily apparent and required expert evidence to establish a disability under the LAD and his conclusion finds support in the record. Plaintiff testified in her deposition she drives, walks her dog and takes yoga classes. Therefore, plaintiff did not establish a claim under for which she

could recover damages under the LAD because she did not prove she had a protected disability.[1]

We next address the TRA. Under the TRA, a landlord is precluded from serving a notice to quit or bringing an eviction action against a tenant as a reprisal for the tenant's efforts to secure or enforce any rights under the lease, including in retaliation for a tenant's complaint to governmental authorities. N.J.S.A. 2A:42-10.10(a)-(b).

To preserve a claim under the TRA, a plaintiff must prove as a result of the landlord's retaliation he or she suffered damages. See Onderdonk v. Presbyterian Homes, 85 N.J. 171, 191 (1981) (holding that plaintiff's TRA claim could not be sustained for his failure to prove damages). "Although New Jersey permits recovery for emotional distress damages in some cases, the potential for fabricated claims justifies a requirement of enhanced proof to support an award

---

[1] After reviewing the record, we consider it unlikely an octogenarian was able to perform all of the tasks to prepare the apartment for an exterminator to address the infestation. However, the record is unclear the extent to which plaintiff requested assistance from defendants for these tasks and whether those requests were denied in the early years of the infestation. When defendants relocated plaintiff, the problems continued. We consider defendants' characterization of plaintiff as an uncooperative and disruptive tenant dubious. However, eventually defendants did attempt to fumigate the apartment and all of plaintiff's belongings and pay for a hotel for plaintiff while the work was undertaken. Why she declined the offer is also unclear.

A-2186-16T2

of such damages." Picogna v. Bd. of Educ., 143 N.J. 391, 396-97 (1996). Additionally, "an award of attorney fees is not considered to be compensatory, but provided, as a policy matter in specific types of cases, to remedy the problem of unequal access to the courts." Baker v. Nat'l State Bank, 353 N.J. Super. 145, 161 (App. Div. 2002) (citation omitted).

Plaintiff asserts defendants retaliated against her for complaining to governmental agencies by sending her a notice to quit and filing an eviction action against her. Plaintiff argues her damages were the incurred attorney's fees and litigation costs for having to defend herself, as well as emotional distress. She argues the trial judge erred by imposing a high burden on liability and damages and requiring expert testimony to prove her emotional distress claim.

Plaintiff provided no expert evidence to support her claim defendants' actions caused emotional suffering and damages. Claims of sleeplessness and anxiety are insufficient under the law. See Juzwiak v. Doe, 415 N.J. Super. 442, 453 (App. Div. 2010). Moreover, standing alone, plaintiff's legal fees do not constitute damages.

Finally, we address plaintiff's claim under the CFA. The CFA provides a remedy for a consumer who has suffered an ascertainable loss of money or

property resulting from an unlawful commercial practice and allows recovery of treble damages, costs, and attorney's fees. Heyert v. Taddese, 431 N.J. Super. 388, 411 (App. Div. 2013) (citing Lee v. First Union Nat'l Bank, 199 N.J. 251, 257 (2009)). The statute applies to landlords as "'sellers' and tenants as 'consumers' since it applies to the rental of real estate." 49 Prospect St. Tenants Asso v. Sheva Gardens, 227 N.J. Super. 449, 465 (App. Div. 1988). In order to state a claim under the CFA, a consumer must allege unlawful conduct, an ascertainable loss and a causal relationship between the unlawful conduct and the ascertainable loss. Heyert, 431 N.J. Super. at 412. "[T]he term 'ascertainable loss,' . . . means that plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 558 (2009) (citation omitted). The "objectively ascertainable loss or damage" must be "measured by 'expert proof of diminution of value' of the plaintiffs' property or 'out of pocket expenses causally connected with the claimed defect perpetuated by the defendant.'" Romano v. Galaxy Toyota, 399 N.J. Super. 470, 479 (App. Div. 2008) (quoting Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 244 (2005)).

If a plaintiff is claiming a loss in value the claim "must be supported by sufficient evidence to get to the factfinder . . . the plaintiff must proffer evidence

A-2186-16T2

of loss that is not hypothetical or illusory." Id. at 479 (internal quotation omitted). The loss in value "[must be] capable of calculation, although it need not be demonstrated in all its particularity to avoid summary judgment." Thiedemann, 183 N.J. at 248.

The CFA "broadly distinguishes between damages on the one hand and non-damages on the other." Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 140 (1999). Damages relate to the ascertainable loss whereas the non-damages are reasonable attorney's fees, filing fees and reasonable costs of suit. Ibid. Therefore the Legislature "implicitly recognized counsel fees as outside the class of damages and as a component of fees and costs by lumping counsel fees, filing fees and costs together." Ibid.

Plaintiff argues the trial judge erred when he ruled she did not prove an ascertainable loss from the infestation because she did not receive what she paid for in rent each month. She asserts the lack of habitability due to the bed bug infestation constituted a condemned commercial practice. She further argues her ascertainable damages are the loss of her personal property, legal fees, and rent recoupment.

Plaintiff did not prove an ascertainable loss sufficient to trigger the protections of the CFA. Under Lettermaier, attorney's fees are outside the

damage calculation of a CFA claim. Plaintiff provided no expert appraisal of the value of her personal property or proof her property was damaged. Moreover, she did not provide evidence that calculated the diminution in value of her apartment.[2]

Furthermore, plaintiff's claims against the Cohen and Lamella defendants were correctly dismissed as the CFA is not applicable against attorneys, Vort v. Hollander, 257 N.J. Super. 56, 62 (App. Div. 1992), and she did not state a claim under the TRA for the reasons explained above.

We do not address plaintiff's remaining arguments as they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] The motion judge found plaintiff's negligence claim still provided an avenue to pursue claims for all compensable damages and the record demonstrates defendants settled her common law claims for $45,000.

A-2186-16T2