OPINION OF THE COURT
John R. Schwartz, J.
In this summary proceeding, the landlord/petitioner, Cross *831 roads Apartments Associates, a Federally assisted apartment complex (hereinafter referred to as Crossroads), seeks to evict its tenant/respondent, Kenneth LeBoo (hereinafter referred to as LeBoo). The sole basis for this eviction proceeding is that LeBoo is in possession of a cat in violation of the terms and conditions of a written lease. In particular, rule 8 of that lease states that: "No dogs, cats or animals of any kind shall be kept or harbored in the apartment for any period of time.” LeBoo answers affirmatively that he is a handicapped person as defined by section 504 of the Rehabilitation Act of 1973 (29 USC § 794) and its implementary regulations (24 CFR 8.1 et seq.) and as defined by the Fair Housing Amendments Act of 1988 (42 USC § 3602 [h]) and its implementary regulations, by virtue of his mental illness.
LeBoo further alleges that he requires the companionship of his cat to cope with his mental disability, and that Crossroads is unlawfully discriminating against him by attempting to enforce its ban against cats in its apartments. Finally, LeBoo affirmatively pleads that Crossroads is estopped from enforcing its "no-pet” rule because other tenants have pets and therefore, Crossroads has failed to uniformly enforce its prohibition.
FACTUAL BACKGROUND
The tenant, Kenneth LeBoo, is a 49-year-old male with a long history of mental illness dating back to the late 1960’s. His mental condition has been diagnosed as panic disorder with agoraphobia, mixed personality disorder, and chronic anxiety with a history of episodic alcohol abuse. The landlord, Crossroads, is an apartment complex located within the City of Rochester, New York, which consists of 518 residential apartment units. Four hundred ninety-six of these apartment units are subject to a Federally funded section 8 housing assistance payment contract. LeBoo has been a tenant since 1978, pursuant to a written lease and receives section 8 assistance. No real problems existed between the parties until LeBoo obtained the subject cat in the spring of 1990. Mr. LeBoo alleges he acquired the cat to help alleviate his intense feeling of loneliness, anxiety and depression, which are daily manifestations of his mental illness.
Upon discovering the cat in LeBoo’s apartment, Crossroads commenced the instant proceeding. After brief discovery, both sides now move for summary judgment. LeBoo alleges that he *832 is a handicapped person and falls within the protection of section 504 of the Rehabilitation Act of 1973 (29 USC § 794). He is asking this court to determine as a matter of law that he needs the cat in order to fully "use and enjoy” his apartment and wants the landlord enjoined from evicting him. The landlord alleges, on the other hand, that New York law enforces "no-pet clauses” as a matter of public policy and that, as a matter of law, Mr. LeBoo’s disability does not necessitate that he keep his cat to be able "to use and enjoy his apartment” (see, 24 CFR 100.204 [a]).
I
New York courts have long recognized the validity of "no-pet clauses” in leases, and harboring a pet when a lease contains a "no-pet clause” constitutes a substantial breach of the lease agreement (Knolls Coop. Section No. II v Cashman, 14 NY2d 579; Kingsview Homes v Jarvis, 48 AD2d 881; Lincoln Coop. Apts. v Zaifert, 23 AD2d 796; East Riv. Hous. Corp. v Matonis, 34 AD2d 937; Pollack v Green Constr. Corp., 40 AD2d 996). Acceptance of the rent over a period of time after discovery of the pet still does not render the "no-pet clause” unenforceable (Riverbay Corp. v Klinghoffer, 34 AD2d 630). Landlords may also selectively enforce the "no-pet clause” (Megalopolis Prop. Assoc. v Buvron, 121 Misc 2d 662; 1036 Park Corp. v Rubin, 92 AD2d 452; Trump Vil. Section 3 v Moore, 84 AD2d 812).
However, New York courts to date have not dealt with the issue of "no-pet clauses” with respect to section 504 of the Rehabilitation Act of 1973 (29 USC § 794). In fact, this court can only find two recorded decisions in the country that have dealt with this issue. (See, Majors v Housing Auth., 652 F2d 454 [5th Cir 1981]; Whittier Terrace Assocs. v Hampshire, 26 Mass App 1020, 532 NE2d 712 [1989].)
Section 504 (a) of the Rehabilitation Act of 1973 (29 USC § 794 [a]) states: "No otherwise qualified individual with handicaps * * * shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or actively receiving Federal financial assistance.”
The Fair Housing Amendments Act of 1988 (42 USC § 3604 [¶] [1], [2]) makes it unlawful for any housing provider covered by the above act:
"(1) [t]o discriminate in the * * * rental, or to otherwise *833 make unavailable or deny, a dwelling to any * * * renter because of a handicap of—
"(A) that * * * renter * * *
"(2) [t]o discriminate against any person in the terms, conditions or privileges of * * * rental of a dwelling * * * because of a handicap of—
"(A) that person”.
The Fair Housing Amendments Act of 1988 and the Regulations of the Department of Housing and Urban Development define discrimination to include a refusal "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling” (42 USC § 3604 [¶] [3] [B]; 24 CFR 100.204).
Therefore, this court must first decide as a matter of law whether LeBoo may seek protection under section 504 of the Rehabilitation Act of 1973 (29 USC § 794), in view of New York’s position that a "no-pet clause” is enforceable, even selectively (Megalopolis Prop. Assoc. v Buvron, 121 Misc 2d 662, supra; 1036 Park Corp. v Rubin, 92 AD2d 452, supra; Trump Vil. Section 3 v Moore, 84 AD2d 812, supra).
Here, there is no question that petitioner, Crossroads, is a Federally funded project. Four hundred ninety-six of its 518 units are subject to a Federal so-called section 8 housing assistance payment contract. Respondent LeBoo’s apartment unit is covered by the section 8 contract. Therefore, Crossroads’ leases, rules and regulations must comply with applicable Federal statutes, rules and regulations. As such, this court will hold as a matter of law that section 504 applies to this claim and the tenant has the right to plead a section 504 violation as an affirmative defense.
In the same vein, however, this court will dismiss the tenant LeBoo’s affirmative defense of "estoppel” on the grounds that New York law recognizes and enforces "no-pet clauses” even where the landlord chooses to selectively enforce such clauses.
II
LeBoo further urges this court to determine as a matter of law that he has established that Crossroads has violated section 504 of the Rehabilitation Act of 1973 and the Fair Housing Amendments Act of 1988. To support his claim, he *834 submits three expert affidavits which state that LeBoo’s cat is necessary for him to use and enjoy his apartment (29 USC § 794; 42 USC § 3604 [¶] [3] [B]; 24 CFR 100.204).
Crossroads, on the other hand, urges this court to determine as a matter of law that LeBoo has not established even "prima facie” the necessity of his cat to assist him in coping with his mental illness. They also submit an affidavit of a psychiatrist.
To prove that Crossroads has violated both acts, LeBoo must demonstrate that:
1) he is handicapped;
2) he is otherwise qualified for the tenancy;
3) that because of his disability, it is necessary for him to keep the pet in order for him to use and enjoy the apartment; and
4) reasonable accommodations can be made to allow him to keep the pet. (See, Doc v New York Univ., 666 F2d 761 [2d Cir 1981]; Prewitt v United States Postal Serv., 662 F2d 292 [5th Cir 1981]; Majors v Housing Auth., 652 F2d 454 [5th Cir 1981], supra; Whittier Terrace Assocs. v Hampshire, 26 Mass App 1020, 532 NE2d 712 [1989], supra.)
First, LeBoo is a handicapped person. There is no dispute about that factual issue. Both parties’ doctors diagnose him as having a mental illness that makes him disabled.
Second, he is an otherwise qualified person for tenancy except for the pet. "An otherwise qualified person is one who is able to meet all of a program’s requirements in spite of his handicap” (Southeastern Community Coll, v Davis, 442 US 397, 406 [1979]). LeBoo had lived at Crossroads 12 years without incident before he obtained his pet. Clearly, he meets all other criteria for tenancy, if not for the pet.
Third, LeBoo must prove that the pet is necessary for him to use and enjoy his apartment (Majors v Housing Auth., 652 F2d 454 [5th Cir 1981], supra; Whittier Terrace Assocs. v Hampshire, 26 Mass App 1020, 532 NE2d 712 [1989], supra). To prevail on this issue, LeBoo must demonstrate that he has an emotional and psychological dependence on the cat which requires him to keep the cat in the apartment. To support his claim, LeBoo has submitted the affidavits of his treating psychiatrist, his clinical social worker, and a certified pet-assisted therapist. They all describe his mental illness, his course of treatment, and conclude that LeBoo receives therapeutic benefits from keeping and caring for his cat. Also, they conclude that the keeping of the cat assists him in his use and *835 enjoyment of his apartment by helping him cope with the daily manifestations of his mental illness.
In opposition, Crossroads submits the affidavit of its psychiatrist who has seen LeBoo twice, examined all his relevant medical records, and concludes that there is "no significant clinical evidence that the cat is necessary or required for LeBoo to be able to fully use and enjoy his apartment”. He further concludes in his report that LeBoo was placed on the drug Prozac around the same time he acquired the cat and LeBoo’s clinical course since taking Prozac has been slightly less tumultuous.
Based on these conflicting opinions, this is not an issue ripe for summary judgment. Genuine issues of fact exist as to whether this cat is necessary for LeBoo to use and enjoy his apartment. "If and when the court reaches the conclusion that a genuine and substantial issue of fact is presented, such determination requires the denial of the application for summary judgment.” (See, Esteve v Abad, 271 App Div 725, 727.) "Since it deprives the litigant of his day in court, it is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues”. (Andre v Pomeroy, 35 NY2d 361, 364; see also, Millerton Agway Coop. v Briarcliff Farms, 17 NY2d 57.) Here, there is a genuine triable issue of fact, namely, whether this cat is necessary for LeBoo to use and enjoy his apartment. (See, Majors v Housing Auth., 652 F2d 454, 458 [1981], supra.)
Fourth, can reasonable accommodations be made by Crossroads which would permit LeBoo to keep his cat? This also constitutes a question of fact. LeBoo alleges that allowing him to keep his cat would not result in any undue financial or operational hardship to Crossroads. He claims reasonable accommodations could be made to allow him to keep his cat. (See, Southeastern Community Coll, v Davis, 442 US 397, 412-413 [1979], supra; School Bd. v Arline, 480 US 273, 278 [1987].)
However, accommodations which place "undue financial and administration burdens” on Crossroads would not be reasonable (Southeastern Community Coll, v Davis, 442 US, supra, at 412). The property manager of Crossroads, in her affidavit, states that the cat would cause an undue administrative burden, and would create health problems for other tenants. This affidavit creates a question of fact concerning this issue.
Ill
Lastly, LeBoo demands a jury trial on the triable issue of *836 fact pursuant to RPAPL 745. Crossroads moves to strike the demand. Here, LeBoo, who is the only party demanding a jury trial, asserts an affirmative defense asking this court to dismiss the action which would permanently enjoin Crossroads from enforcing the "no-pet clause” as it applied to LeBoo. LeBoo, in effect, is asking for equitable relief. RPAPL 745 does not specifically grant the right to a jury trial on equitable issues. The prevailing rule is that a respondent waives his right to a jury trial when he asserts equitable defenses only. (See, Hickland v Hickland, 100 AD2d 643, 644, appeal dismissed 63 NY2d 951; Lewis v Levick, 99 AD2d 659; Seneca v Novaro, 80 AD2d 909; Sue v Homer, 15 AD2d 729.) Therefore, the demand for a jury trial is hereby stricken.