2009 ND 217

**A. William LUCAS, Plaintiff
and Appellant**

v.

**RIVERSIDE PARK CONDOMINIUMS UNIT OWNERS ASSOCIATION, a North Dakota Nonprofit Corporation, Defendant and Appellee.**

No. 20090122.

Supreme Court of North Dakota.

Dec. 22, 2009.

Rehearing Denied Feb. 2, 2010.

A. William Lucas, Bismarck, N.D., plaintiff and appellant, self-represented.

Monte Lane Rogneby, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1]   A. William Lucas appeals from an amended judgment dismissing his action against Riverside Park Condominiums Unit Owners Association under the federal Fair Housing Act and the state Housing Discrimination Act for failing to grant him an accommodation for his disability, and awarding the Association its costs and attorney fees.   We conclude the district court did not err in granting summary judgment dismissal of Lucas's action, but should not have awarded the Association costs and attorney fees related to Lucas's fourth request for an accommodation contained in his second amended complaint. We affirm in part and reverse in part.

I

[¶ 2]   In 1999 Lucas purchased a unit in Riverside Park Association's Condominiums in Bismarck.   The condominium's declaration of covenants and restrictions prohibits unit owners from keeping domestic pets on the premises.   According to Lucas, a dog owned by his former wife would periodically visit him at his unit. The Owners Association eventually sued Lucas, seeking an injunction prohibiting him from keeping a pet in violation of the restrictive covenant.   Lucas contended the restrictive covenant was invalid and raised numerous counterclaims, but stated that "he was not requesting an accommodation under the Fair Housing Act" but "will claim the need for an accommodation under the Fair Housing Act in the event a court holds valid the restrictive covenant prohibiting pet ownership."   The district court upheld the validity of the restrictive covenant and enjoined Lucas "from having or keeping a dog in or at his unit or upon the common areas."   The court held "Lucas does not have a valid claim for an accommodation under the Federal Fair Housing Act; or if he had a valid claim, the claim was voluntarily waived by his failure to make a valid request to the Association for an accommodation."   The court further ruled the "Association need not honor a future request by Lucas for an accommodation under the Act, unless there is a significant change in Lucas's health (disability status.)."   This Court affirmed the district court's decision in *Riverside Park Condominiums Unit Owners Ass'n v. Lucas*, 2005 ND 26, ¶ 36, 691 N.W.2d 862 ("*Lucas I*").

[¶ 3]   On September 9, 2004, while *Lucas I* was pending on appeal, Lucas requested that the Association grant him an accommodation under the federal Fair Housing Act and state Housing Discrimination Act to keep an "assistive therapeutic companion animal (dog)."   The request was accompanied by a December 22, 2001, letter from a licensed clinical psychologist stating Lucas "needs a therapeutic companion assistive animal," and a January 5, 2002, letter from a physician "prescribing for him a therapeutic pet . . . as a medically needed part of his treatment."   Because the medical opinions relied upon predated the district court's judgment in *Lucas I* and did not allege or demonstrate a significant change in Lucas's disability status, the Association denied the request.   On September 19, 2005, Lucas made a second

request for an accommodation and relied on the same letters submitted with the first request. The Association denied the request for the same reason. On March 3, 2007, Lucas, relying on the same letters, made a third request for an accommodation, which the Association again denied.

[¶ 4] On March 29, 2007, Lucas brought this action against the Association seeking damages and injunctive relief for its alleged violation of the federal Fair Housing Act and the state Housing Discrimination Act, and seeking damages for intentional infliction of emotional distress. The Association moved to dismiss the action for failure to state a claim and sought sanctions against Lucas under N.D.R.Civ.P. 11.

[¶ 5] On June 6, 2007, Lucas sent the Association a fourth request for an accommodation "to keep, maintain, and raise an assistive therapeutic companion animal (dog)." With the request, Lucas submitted forms titled "Certification Of Status As An Individual With A Disability" which contained identical statements from two physicians dated May 8 and 11, 2007, declaring:

*Accommodation/Modification:* To permit A. William to keep, maintain, and raise an assistive therapeutic companion service animal (dog). It is also my opinion that there has been a significant change in Mr. Lucas' health (disability status) since the last time he was examined by me.

[¶ 6] In response to Lucas's fourth request for accommodation, the Association's attorney wrote him a letter stating in part:

The information you have provided the Association is insufficient to support your request for an accommodation. The Association needs additional information from you before it can decide whether to grant or deny your request. Please provide the following additional information from your healthcare provider: 1) a description of the claimed disability; 2) the date that you were first diagnosed or treated for the disability; 3) whether the claimed disability was treated or diagnosed prior to November 10, 2003 and, if so, a description of how the disability has changed since November 10, 2003; 4) an explanation from your healthcare providers of the relationship between your disability and your need for a "therapeutic companion service animal;" 5) an explanation from your healthcare providers as to why allowing you to keep a "therapeutic companion service animal" is a reasonable accommodation for your disability; and 6) a description of the "therapeutic companion service animal" you propose keeping at your unit, including any special training the dog has received.

[¶ 7] On June 27, 2007, Lucas responded in a letter to the Association's attorney:

I have tried to provide all of the medical information normally required by the requirements of the fair housing laws. I sent my medical information to three of our Board members who I thought would keep that information confidential, but you apparently advised them not to review the information.

. . . .

I will again attempt [to] provide you with the required additional medical information on the following conditions:

1. The information will be in a sealed envelope, with return postage on it. If you cannot accept the information upon the following conditions, please simply mail the envelope back to me unopened.

2. That the medical information is used only for requirements of the Federal and North Dakota Fair Housing Law, and that you and members of

your group will not publicize the information or otherwise use it for your malicious harassment purposes.

3. That you do not attach my medical information to anything that you file with a court without my permission or a court order. You have done that in the past as a harassment tactic simply to get the information public with the information having no relevance to the document filed.

4. If Ms. Wahl was required to provide any medical information, that you treat and use my medical information with the same confidentiality and limited purposes as the medical information provided by Ms. Wahl.

5. That you keep a record of possession of every person that has possession or an opportunity to review my medical information, and that the record of possession/review is furnished to me every thirty days or whenever it changes.

6. If you think you need additional medical information from me, please prepare an acceptable confidentiality agreement executed by you and Mr. Workman on behalf of the Board. The only other way for me to give additional medical information to you would be pursuant to a protective court order to limit the information to proper purposes.

7. If you can accept the above conditions, please review the attached schedule I prepared in May which was previously furnished to three board members.

[¶ 8] On July 5, 2007, the Association's attorney wrote a letter to Lucas informing him the Association was returning the medical information that had been enclosed in a sealed envelope:

I am writing to inform you that the Association will not agree to the terms contained in your June 27, 2007 letter. The Association is willing to review any medical information that you wish to provide in support of your request. The Association will treat the information as confidential as required by state and federal law. The information will only be reviewed by the Association's Board of Directors and, if necessary, any individual retained by the Board to assist it in evaluating your request. The information will be used only to determine whether or not to grant your request for an accommodation.

Lucas did not respond to this letter.

[¶ 9] In August 2007, the district court granted the Association's motion to dismiss Lucas's action, but later granted Lucas's motion for reconsideration. Lucas eventually moved to amend his complaint to add a claim based on his June 2007 fourth request for accommodation and moved for summary judgment. The Association also moved for summary judgment. The court ultimately denied Lucas's motion and granted the Association's motion, concluding Lucas had failed to provide competent evidence that his disability status had changed in regard to his first three requests for accommodation or that the Association's conduct had caused him emotional distress. The court also granted summary judgment dismissal of Lucas's fourth request for accommodation, concluding "Lucas has provided the Court with no evidence that the Association has unreasonably denied him a reasonable accommodation." The court awarded the Association $926.30 as a sanction for Lucas's failure to appear at a deposition; $5,834.94 in costs and attorney fees for its defense of his claim in his complaint and amended complaint based on the first three requests for accommodation; and $16,597.21 in costs and attorney fees for its defense of his claim in his second amended

complaint based on the fourth request for accommodation.

[¶ 10] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Lucas's appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 11] Lucas argues the district court judge should have granted his request to recuse himself from the case for "[j]udicial bias and prejudice against Lucas." Lucas relies on adverse legal rulings by the judge, who did not preside over *Lucas I*, to support his claim of judicial bias.

[¶ 12] Adverse rulings alone are not evidence of judicial bias or partiality. *Reems v. St. Joseph's Hosp. and Health Ctr.*, 536 N.W.2d 666, 671 (N.D.1995). Lucas has provided no evidence of judicial bias or partiality. We conclude Lucas's argument is without merit.

## III

[¶ 13] Lucas contends the district court erred in refusing to strike the Association's pleadings because it has not been properly authorized by its board of directors to defend this action.

[¶ 14] Even if Lucas may raise this issue, *see generally Farmers Union Oil Co. v. Maixner*, 376 N.W.2d 43, 46 (N.D. 1985) (defendant could not object to officer initiating lawsuit on behalf of corporate plaintiff where corporate plaintiff did not object to officer's lack of authority), Lucas has failed to present any credible evidence of a lack of authorization. We agree with the district court's observation that "[w]hether the Board has inappropriately delegated board functions to non-board members does not affect whether Lucas has met the elements for a claim under [federal or state law] for the Association's alleged denial of a reasonable accommodation under those statutes." We conclude the court did not err in refusing to strike the Association's pleadings.

## IV

[¶ 15] Lucas argues the district court erred in granting summary judgment dismissal of his claims.

[¶ 16] The standards governing summary judgment are well established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 5, 766 N.W.2d 458 (quoting *Farmers Union Oil Co. v. Smetana*, 2009 ND 74, ¶ 8, 764 N.W.2d 665).

## A

[¶ 17] Enacted in 1999, North Dakota's Housing Discrimination Act, N.D.C.C. ch. 14–02.5, was designed to be substantially equivalent to the federal Fair Housing Act, 42 U.S.C. §§ 3601–3631. *See State ex rel. North Dakota Dep't of Labor v. Matrix Props. Corp.*, 2009 ND 137, ¶ 6, 770 N.W.2d 290. Under federal and state law, an aggrieved person may sue to obtain relief for an alleged discriminatory housing practice. *Id.* at ¶ 7. Under 42 U.S.C. § 3604(f)(2)(A), it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of [that person's] handicap." *See also* N.D.C.C. § 14–02.5–06(2). "[D]iscrimination" is defined to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *see also* N.D.C.C. § 14–02.5–06(3)(b). A " '[h]andicap' " is defined as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h); *see also* N.D.C.C. § 14–02.5–01(6) (defining " '[d]isability' " in similar terms).

[¶ 18] In *Prindable v. Association of Apartment Owners of 2987 Kalakaua*, 304 F.Supp.2d 1245, 1254 (D.Haw.2003), *aff'd sub nom. DuBois v. Association of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir.2006), the court addressed the plaintiff's burden in a reasonable accommodation case under federal law:

> To prevail on a claim for failure to make a reasonable accommodation, the plaintiff must establish (1) that he or an associate of his is handicapped within the meaning of § 3602(h) and, that the defendant knew or should have known of this fact; (2) that an accommodation may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (3) that such accommodation is reasonable; and (4) that the defendant refused to make the requested accommodation.

(Footnote omitted); *see also United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir.1997). Under this Court's earlier decision in *Lucas I*, 2005 ND 26, ¶ 27, 691 N.W.2d 862, the Association was not required to " 'honor a future request by Lucas for an accommodation under the Act, unless there is a significant change in Lucas's health (disability status.).' " To the extent Lucas argues this restriction is invalid, he unsuccessfully attacked the provision in *Lucas I*, and res judicata and collateral estoppel preclude him from relitigating the issue in this case. *See, e.g., Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 383–85 (N.D.1992).

[¶ 19] "Examples in federal regulations and case law have made it clear that a reasonable accommodation may include a waiver of a no-pets rule to allow for a service animal." R. Huss, *No Pets Allowed: Housing Issues and Companion Animals,* 11 Animal L. 69, 74 (2004) (footnotes omitted). A fair number of cases, many of which are unpublished decisions, address reasonable accommodation in the context of service or companion animals. Unpublished decisions from other jurisdictions have value only if they are persuasive. *See In re Guardianship of Barros,* 2005 ND 122, ¶ 15, 701 N.W.2d 402. Although there is some conflict in the cases concerning certain aspects of what a plaintiff must establish to prevail in a reason-

able accommodation case concerning service or companion animals, the courts are in agreement on other aspects.

[¶ 20] One disagreement among courts is whether a service or companion animal must be shown to have been specially trained to assist the individual with the individual's particular handicap. Some courts insist that there must be some evidence of training of the animal, either by a professional or other person, to set the service animal apart from an ordinary pet and to establish that allowing an animal on the premises is a necessary and reasonable accommodation. *See, e.g., Bronk v. Ineichen,* 54 F.3d 425, 429, 431 (7th Cir.1995); *Assenberg v. Anacortes Hous. Auth.,* 2006 WL 1515603 *3 (W.D.Wash. May 25, 2006) (unpublished decision), *aff'd on other grounds,* 268 Fed.Appx. 643 (9th Cir.2008) (unpublished decision); *Prindable,* 304 F.Supp.2d at 1256–57; *Green v. Housing Auth. of Clackamas County,* 994 F.Supp. 1253, 1255–56 (D.Or.1998); *State ex rel. Henderson v. Des Moines Mun. Hous. Agency,* 2007 WL 4553350 *5–6 (Iowa Ct. App. Dec.28, 2007) (unpublished decision); *Oras v. Housing Auth. of the City of Bayonne,* 373 N.J.Super. 302, 861 A.2d 194, 202–03 (2004); *Storms v. Fred Meyer Stores, Inc.,* 129 Wash.App. 820, 120 P.3d 126, 128–29 (2005); *Timberlane Mobile Home Park v. Washington State Human Rights Comm'n,* 122 Wash.App. 896, 95 P.3d 1288, 1291 (2004); *In re Kenna Homes Coop. Corp.,* 210 W.Va. 380, 557 S.E.2d 787, 798 (2001). Other courts take the position that the plaintiff need not establish that the animal has been trained if it can be shown the animal's presence ameliorates the effects of the disability. *See, e.g., Overlook Mut. Homes, Inc. v. Spencer,* —— F.Supp.2d ——, —— —— (S.D.Ohio 2009) (unpublished decision); *Janush v. Charities Hous. Dev. Corp.,* 169 F.Supp.2d 1133, 1136 (N.D.Cal.2000); *Auburn Woods I Homeowners Ass'n v. Fair Employment and Hous. Comm'n,* 121 Cal. App.4th 1578, 18 Cal.Rptr.3d 669, 682 (2004), *Crossroads Apartments Assocs. v. LeBoo,* 152 Misc.2d 830, 578 N.Y.S.2d 1004, 1007 (N.Y.City Ct.1991). Whether the animal is trained, courts agree there must be a showing how the animal will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability. *See, e.g., Bronk,* at 429; *Spencer,* —— F.Supp.2d at ——; *Hawn v. Shoreline Towers Phase I Condominium Ass'n, Inc.,* 2009 WL 691378 *7 (N.D.Fla. March 12, 2009) (unpublished decision); *Prindable,* at 1256; *State ex rel. Henderson,* at *3; *Nason v. Stone Hill Realty Ass'n,* 1996 WL 1186942 *3 (Mass.Super.Ct. May 6, 1996) (unpublished decision); *Oras,* at 203; *Landmark Props. v. Olivo,* 5 Misc.3d 18, 783 N.Y.S.2d 745, 747–48 (N.Y.Sup.App.2004); *LeBoo,* at 1006–07; *In re Kenna Homes Coop. Corp.,* at 799.

[¶ 21] Courts also agree a defendant may request, and indeed may have a duty to request, additional information from the plaintiff reasonably necessary to make a meaningful review and an informed decision whether the animal is necessary to ameliorate the disability. *See, e.g., Hawn,* 2009 WL 3004036 at *3–4; *Spencer,* —— F.Supp.2d at ——; *Assenberg,* 2006 WL 1515603 at *4; *Prindable,* 304 F.Supp.2d at 1260; *Auburn Woods I Homeowners Ass'n,* 18 Cal.Rptr.3d at 683–84; *In re Kenna Homes Coop. Corp.,* 557 S.E.2d at 799–800. A plaintiff's failure to respond to a reasonable request for additional information can lead to dismissal of an action on the ground that the defendant could not have known of the plaintiff's disability and the actual necessity of a service or companion animal, *see, e.g., Hawn,* at *3, or that the defendant awaiting additional information did not in fact deny the request

for an accommodation. *See, e.g., Assenberg,* at *4; *Prindable,* at 1260.

### B

[¶ 22] The district court dismissed Lucas's action concerning the first three requests for accommodation because he failed to provide competent evidence that his health or disability status had changed.

[¶ 23] The judgment in *Lucas I,* 2005 ND 26, ¶ 27, 691 N.W.2d 862, provided that the " 'Association need not honor a future request by Lucas for an accommodation under the Act, unless there is a significant change in Lucas's health (disability status.).' " Lucas's first three requests to the Association for an accommodation did not allege any significant change in his health or disability status, and he relied on medical opinions in existence before *Lucas I* was decided. Lucas failed to raise a genuine issue of material fact regarding the first three claims for an accommodation, and we conclude the district court properly granted summary judgment dismissing his action based on those requests.

### C

[¶ 24] The district court granted summary judgment dismissal of Lucas's fourth request for accommodation on the ground that "Lucas has provided the Court with no evidence that the Association has unreasonably denied him a reasonable accommodation."

[¶ 25] In granting summary judgment, the district court relied on *Prindable,* 304 F.Supp.2d 1245, a case with many factual similarities. In *Prindable,* the plaintiff requested an accommodation to keep a service animal in his apartment and submitted to the defendants a handwritten note on a prescription pad stating, " 'Prindable has a medical illness for which a dog is necessary for his improvement.' " *Id.* at 1249–50.

The defendants informed Prindable the note was unacceptable and asked for verification from a physician stating " 'the nature of the "medical illness" or disability . . . and how a pet would alleviate the effects of this handicap.' " *Id.* at 1250. Prindable submitted a letter from his physician stating only that Prindable " 'has a medical illness for which a dog is necessary for his improvement.' " The defendants wrote twice to the physician seeking additional information and promising that the information would be kept confidential, but the physician did not reply. *Id.* A behaviorist sent a letter to the defendants stating Prindable had symptoms of depression and a pet would have a positive impact on Prindable's condition, and recommending that animal-assisted therapy would assist in his improvement. *Id.* Another physician agreed with the behaviorist's diagnosis and recommendation in a separate letter to the defendants. *Id.* After the defendants informed Prindable his request would be reviewed at the next board of directors meeting, Prindable filed a housing discrimination complaint alleging the defendants had failed to make a reasonable accommodation for him in light of his handicap. *Id.* at 1251.

[¶ 26] The court granted summary judgment against Prindable in part because he failed to establish the defendants refused to make the requested accommodation, the fourth requirement to prevail in a reasonable accommodation case. *Prindable,* 304 F.Supp.2d at 1258–60. The court ruled the documents submitted "did not provide a basis from which Defendants could conclude that Prindable was entitled to house [the pet] in unit 102 as a reasonable accommodation for his disability." *Id.* at 1258. The court concluded:

> [T]here is no evidence that Defendants ever denied Plaintiffs' request for a service animal. . . . [T]he [Defendants]

merely requested additional, appropriate information from Prindable and his treating physicians. Landlords are not precluded from inquiring into and verifying the asserted handicapped [sic] or the necessity of the accommodation sought.... The Court finds no evidence to indicate that Defendants were unwilling to reasonably accommodate Prindable if shown to be necessary for his equal use and enjoyment of unit 102.

*Id.* at 1260 (citations and footnote omitted).

[¶ 27] Here, Lucas's fourth request to the Association for an accommodation was submitted with forms containing identical statements from two physicians asking the Association "[t]o permit A. William to keep, maintain, and raise an assistive therapeutic companion service animal (dog). It is also my opinion that there has been a significant change in Mr. Lucas' health (disability status) since the last time he was examined by me." Under the case law on reasonable accommodations, these conclusory and ambiguous statements are insufficient to raise a genuine issue of material fact that an accommodation is necessary to afford Lucas an equal opportunity to enjoy his dwelling. *See, e.g., Hawn,* 2009 WL 3004036 at *3–5; *Assenberg,* 2006 WL 1515603 at *1–4; *Nason,* 1996 WL 1186942 at *1–3; *Olivo,* 783 N.Y.S.2d at 748. Because of the conclusory and ambiguous nature of Lucas's documents in support of his request, the Association was justified in seeking additional information to enable it to make a meaningful review of and an informed decision on his request. In response to the Association's request, Lucas submitted additional information but would not allow it to be reviewed unless the Association agreed to abide by several conditions. We agree with the district court's analysis:

The Association refused to review Lucas' medical records because of the conditions Lucas placed on the Association. The Association assured Lucas that his medical records would be kept confidential. Additionally, Lucas had already served a Summons and Complaint on the Association when he made his fourth request for an accommodation and Lucas' medical condition was central to the pending litigation. Finally, Lucas did not provide the Association with any authority which would require the Association to keep a list of any person who had possession or viewed Lucas' medical records and for that list to be remitted to Lucas every thirty days or every time another name was added to the list. The Association was reasonable in its refusal to agree to Lucas' conditions.

[¶ 28] After assuring Lucas that his medical records would be kept confidential as required by law, Lucas failed to respond, and the Association was unable to conduct any meaningful review of his request. Lucas's refusal to submit his medical information to the Association without unreasonable conditions created a stalemate, making it impossible for the Association to render any decision on his request for an accommodation.

[¶ 29] We conclude the district court did not err in granting summary judgment dismissal of Lucas's claim based on his fourth request for an accommodation, because he failed to raise a genuine issue of material fact that the Association refused to make the requested accommodation.

V

[¶ 30] Lucas argues the district court erred in granting summary judgment dismissal of his claim against the Association for intentional infliction of emotional distress.

[¶ 31] In *Vandall v. Trinity Hosps.,* 2004 ND 47, ¶ 29, 676 N.W.2d 88, this Court explained:

In *Muchow v. Lindblad,* 435 N.W.2d 918, 923–25 (N.D.1989), we said a claim for intentional infliction of emotional distress under Restatement (Second) of Torts § 46 (1965) consists of extreme and outrageous conduct that is intentional or reckless and causes severe emotional distress. In discussing the degree of extreme and outrageous conduct necessary for intentional infliction of emotional distress, we said a recitation of the defendant's conduct must lead an average member of the community to exclaim, "outrageous!" *Muchow,* at 924 (quoting Restatement (Second) of Torts § 46 comment d). In *Dahlberg [v. Lutheran Soc. Servs.],* 2001 ND 73, ¶ 19, 625 N.W.2d 241, we said the threshold element of extreme and outrageous conduct is narrowly limited to outrageous conduct that exceeds all possible bounds of decency. In determining whether conduct is extreme and outrageous, courts consider whether the conduct is so extreme in degree as to be beyond all possible bounds of decency and utterly intolerable in a civilized society. *Id.* (quoting *Muchow,* at 924). Whether the alleged actions meet the threshold of extreme and outrageous conduct is a question of law to be decided by the court. *Dahlberg,* at ¶ 21.

[¶ 32] To support his claims, Lucas alleged members of the Association "have verbally and physically threatened" him. Liability for intentional infliction of emotional distress " 'clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " *Muchow v. Lindblad,* 435 N.W.2d 918, 924 (N.D.1989) (quoting Restatement (Second) of Torts § 46 comment d (1965)). We agree with the district court that as a matter of law, Lucas's allegations do not rise to the level necessary to support an action for intentional infliction of emotional distress. We conclude the court properly granted summary judgment dismissal of this claim.

## VI

[¶ 33] Lucas argues the district court erred in ordering him to pay as a discovery sanction $926.30, which represents the Association's attorney fees for a deposition Lucas failed to attend.

[¶ 34] A district court has broad discretion to impose an appropriate sanction for discovery abuses under N.D.R.Civ.P. 37(b)(2), and its decision will be set aside on appeal only if it has abused that discretion. *Bertsch v. Bertsch,* 2007 ND 168, ¶ 13, 740 N.W.2d 388. A court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process. *May v. Sprynczynatyk,* 2005 ND 76, ¶ 19, 695 N.W.2d 196.

[¶ 35] Lucas contends he should not have been sanctioned, because he was in Florida at the time and was unaware of the deposition date. However, the record reflects the Association attempted to schedule a deposition several times, but Lucas continuously responded he would not be available on the scheduled date and would instead find an alternative date he would be available. Lucas did not provide any alternative dates, and the Association scheduled another date and said it would not reschedule because Lucas had failed to provide alternative dates he could attend the deposition. A member of Lucas's staff informed the Association Lucas would not be able to attend his scheduled deposition.

[¶ 36] We conclude the district court did not abuse its discretion in sanctioning Lucas for his abuse of discovery in failing to cooperate and provide alternative dates for his deposition.

## VII

[¶ 37] Lucas argues the district court erred in awarding the Association more than $22,000 in costs and attorney fees for defending his lawsuit.

## A

[¶ 38] In awarding the Association its costs and attorney fees in this case, the district court relied on 42 U.S.C. § 3613(c)(2), N.D.C.C. § 14–02.5–44, N.D.C.C. § 28–26–01(2), and N.D.R.Civ.P. 11(b), and determined "sanctions for filing this lawsuit are warranted."

[¶ 39] Under 42 U.S.C. § 3613(c)(2) of the federal Fair Housing Act, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." Under N.D.C.C. § 14–02.5–44, the similar provision of the state Housing Discrimination Act, a court "may award reasonable attorney's fees to the prevailing party and assess court costs against the nonprevailing party." Although the language of 42 U.S.C. § 3613(c)(2) does not differentiate between prevailing plaintiffs and prevailing defendants, courts in Fair Housing Act cases have overwhelmingly applied the standard used for civil rights actions set forth in *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), in which the United States Supreme Court ruled "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *See, e.g., Claiborne v. Wisdom*, 414 F.3d 715, 719–20 (7th Cir.2005); *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 606 (4th Cir.1997); *Brooks v. Center Park Assocs.*, 33 F.3d 585, 587 (6th Cir.1994); A.

Wooster, *Award of attorney's fees to prevailing parties in actions under Fair Housing Act*, 42 U.S.C.A. § 3613(c)(2), 159 A.L.R. Fed. 279, § 4 (2000), and cases collected therein. We conclude the district court was required to find that Lucas's claim was frivolous to award the Association its costs and attorney fees as a prevailing party under 42 U.S.C. § 3613(c)(2) and N.D.C.C. § 14–02.5–44.

[¶ 40] Section 28–26–01(2), N.D.C.C., permits a district court to award costs and attorney fees if it finds a claim is frivolous:

> In civil actions the court shall, upon a finding that a claim for relief was frivolous, award reasonable actual and statutory costs, including reasonable attorney's fees to the prevailing party. Such costs must be awarded regardless of the good faith of the attorney or party making the claim for relief if there is such a complete absence of actual facts or law that a reasonable person could not have thought a court would render judgment in that person's favor, providing the prevailing party has in responsive pleading alleged the frivolous nature of the claim. This subsection does not require the award of costs or fees against an attorney or party advancing a claim unwarranted under existing law, if it is supported by a good-faith argument for an extension, modification, or reversal of the existing law.

[¶ 41] A court may also impose sanctions against an attorney or represented party for a violation of the requirements of N.D.R.Civ.P. 11(b):

> (b) *Representations to Court.* By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information,

and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or are reasonably based on a lack of information or belief.

[¶ 42] A district court must award costs and attorney fees if the court determines the claim is frivolous under N.D.C.C. § 28–26–01(2), but the court has discretion to impose sanctions for violations of the requirements of N.D.R.Civ.P. 11(b). *See Strand v. Cass County*, 2008 ND 149, ¶¶ 12, 15, 753 N.W.2d 872. We review a court's determination that a particular claim is frivolous under the abuse of discretion standard. *Id.* at ¶ 13.

### B

[¶ 43] The district court awarded the Association costs and attorney fees of $5,834.94 associated with its defense of Lucas's complaint and amended complaint which contained his action based on the first three requests for accommodation.

[¶ 44] Under this Court's decision in *Lucas I*, 2005 ND 26, ¶ 27, 691 N.W.2d 862, Lucas was required to show a significant change in his health or disability status before the Association was obligated to honor a request for an accommodation. Lucas's first three requests for an accommodation simply ignored the *Lucas I* requirement. Consequently, Lucas's claim against the Association based on its refusal to grant his first three requests for an accommodation was patently frivolous.

[¶ 45] We conclude the district court did not abuse its discretion in awarding the Association $5,834.94 for its costs and attorney fees as a sanction for having to defend Lucas's complaint and amended complaint.

### C

[¶ 46] The district court awarded the Association costs and attorney fees of $16,597.21 associated with its defense of Lucas's second amended complaint which included his action based on the fourth request for an accommodation. In awarding costs and attorney fees to the Association, the court reasoned, "[b]ecause Lucas has not proved a change in health status, and states he has the ability to do so, sanctions for filing this lawsuit are warranted."

[¶ 47] "Affirmance of a summary judgment on appeal does not necessarily mean that a claim is frivolous." *Industrial Comm'n v. McKenzie County Nat'l Bank*, 518 N.W.2d 174, 179 (N.D. 1994); *see also Peterson v. Zerr*, 477 N.W.2d 230, 236 (N.D.1991). While Lucas's first three requests for accommodation did not implicate the provisions of the federal Fair Housing Act or state Housing Discrimination Act because of the requirement imposed by *Lucas I*, 2005 ND 26, ¶ 27, 691 N.W.2d 862, Lucas's fourth request for an accommodation brought those federal and state provisions into play. We had not before addressed those provisions of federal and state law in the context of

reasonable accommodations. Case law reveals the requirements to prevail on a claim for failure to make a reasonable accommodation have not been uniformly applied. Lucas has taken the position throughout the litigation that the forms he submitted with his fourth request for accommodation were sufficient in themselves and the conditions he placed on reviewing his medical information were reasonable. Neither party cited, nor have we found, a reasonable accommodations case involving conditions placed on allowing review of medical information. Although we have concluded the forms were insufficient and affirmed the district court's determination that the Association acted "reasonabl[y]" in refusing to agree to those conditions, "a court should not use the wisdom of hindsight to determine whether claims are frivolous." *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73, 84–85 (N.D. 1991). This Court has ruled district courts have abused their discretion in awarding costs and attorney fees for frivolous claims in cases in which the law is complex, unclear, or unsettled, or in which substantial legal issues had not yet been decided in North Dakota, because those circumstances make it more likely that a party might reasonably expect to prevail on a claim. *See, e.g., Industrial Comm'n*, 518 N.W.2d at 179; *Soentgen*, 467 N.W.2d at 85–86; *Larson v. Baer*, 418 N.W.2d 282, 290 (N.D.1988); *see also Jensen v. Zuern*, 517 N.W.2d 118, 129 (N.D.Ct.App.1994); *cf. Zerr*, 477 N.W.2d at 236 (intent of N.D.C.C. § 28–26–01(2) "is to deter the pursuit of wholly groundless and meritless claims, not to punish inartful drafting").

[¶ 48] We believe the district court should not have determined Lucas's claim based on his fourth request for an accommodation was frivolous and warranted a sanction, because that claim was not so lacking in fact or law that a judgment in his favor was beyond expectation by a reasonable person. *See Industrial Comm'n*, 518 N.W.2d at 179. We conclude it was an abuse of discretion to award the Association $16,597.21 in costs and attorney fees associated with its defense of Lucas's claim based on his fourth request for an accommodation contained in his second amended complaint.

## VIII

[¶ 49] We deny the Association's request for an award of costs and attorney fees to defend a frivolous appeal under N.D.R.App.P. 38. We have considered the remaining arguments and conclude they are either unnecessary to this decision or are without merit. We reverse that part of the district court amended judgment awarding the Association its costs and attorney fees incurred in defending Lucas's claim based on his fourth request for an accommodation contained in his second amended complaint. We affirm the remainder of the amended judgment.

[¶ 50] GERALD W. VANDE WALLE, C.J., BENNY A. GRAFF, and RONALD E. GOODMAN, S.JJ., and DANIEL J. CROTHERS, J., concur.

[¶ 51] The Honorable BENNY A. GRAFF, Surrogate Judge, and the Honorable RONALD E. GOODMAN, Surrogate Judge, sitting in place of KAPSNER, J., and MARING, J., disqualified.